UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| **DEANNA L. HASTINGS,** ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | Case No. 08-2190 |
| **COMMISSIONER OF SOCIAL SECURITY,** ) | |
| **sued as Michael J. Astrue,** ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

In March 2008, Administrative Law Judge Barbara J. Welsch (hereinafter "ALJ") denied Plaintiff Deanna Hasting's application for disability insurance benefits and supplemental security income. The ALJ found that Plaintiff was not disabled because she could still perform her past relevant work as well as other work that exists in the national economy.

In August 2008, Plaintiff filed a Complaint against Defendant, Michael Astrue, Commissioner of Social Security, seeking review of the ALJ's decision to deny her disability benefits and supplemental security income. In January 2009, Plaintiff filed a Motion for Summary Judgment (#12). In February 2009, Defendant filed a Motion for an Order Which Affirms the Commissioner's Decision (#15). After reviewing the record and parties' memoranda, this Court recommends, pursuant to its authority under 28 U.S.C. § 636(b)(1)(B), that Plaintiff's Motion for Summary Judgment or Remand **(#12)** be **DENIED**.

### I. Background
### A. Procedural Background

In June 2004, Plaintiff filed an application for disability insurance benefits and supplemental security income claiming she became disabled in January 2003 due to adhesive disease, carpel tunnel, bone spurs, depression, high blood pressure, obesity, knee surgeries, and arthritis. (R. 84, 82, 90.) The Social Security Administration (hereinafter "SSA") denied Plaintiff's application initially and upon reconsideration. (R. 48-52, 40-43.) In August 2007, Plaintiff filed a timely request for a hearing. (R. 53-54.) In November 2007, the ALJ conducted

the hearing. (R. 457.) Plaintiff, her husband, and a vocational expert (hereinafter "VE") testified at the hearing. (R. 457.) In March 2008, the ALJ denied Plaintiff's application. (R. 18-35.)

In June 2008, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (R. 4-6.) In August 2008, Plaintiff appealed the decision by filing a complaint with this Court pursuant to 42 U.S.C. § 405(g), requesting that the Court grant summary judgment in Plaintiff's favor or remand the case for rehearing.

### B.  Plaintiff's Background

Plaintiff was 44 years old at the date of the hearing. (R. 228.) She was 39 when she applied for social security benefits. She has earned a GED. (R. 463.) Plaintiff previously worked as a cashier, uniform salesperson, receptionist, customer service representative, seasonal sales assistant, and sewing machine operator. (R. 463-69.)

The parties have both discussed Plaintiff's medical history in detail and the Court need not repeat it here.

### C.  Plaintiff's Testimony at the Hearing

In November 2007, the ALJ conducted a hearing, and Plaintiff, her husband, and VE Bob Hammond testified.

Plaintiff is separated from her husband and lives with her mother and one daughter from her first marriage. Her two younger children stay with her part time. Plaintiff's husband does not live in the house, but every night he takes the two younger children to his home where they sleep.

Plaintiff last worked in November 2006. Plaintiff has worked as a cashier at several locations at different times. She worked part time for about a year providing customer service

for a uniform company, answering phones, and selling uniforms. Plaintiff worked as a cashier and receptionist for two car dealerships, one part time and one full time. Plaintiff also sewed and repaired tent awnings.

Plaintiff testified that she cannot work because she has trouble concentrating, often cries, and cannot walk well due to rheumatoid arthritis and fibromyalgia. Plaintiff stated that she had received wrist braces for carpel tunnel three weeks before the hearing. She testified that she has difficulty gripping things because her wrists are so weak.

Plaintiff stated that her medications are sometimes helpful, but they also make her tired, drowsy, dizzy, cause her feet and hands to swell, and interfere with her ability to concentrate. She also stated that the medications do not help her to stand and do not entirely relieve her pain.

Plaintiff testified that she was not currently seeing a psychiatrist, but had an appointment scheduled with Dr. Yang. Plaintiff testified she had trouble getting an appointment with a psychiatrist due to insurance problems. Plaintiff stated that she stopped seeing Dr. Yang in September 2006 because he prescribed Geodon which she felt made her delusional and gave her chest pains.

Plaintiff testified that she had never had a problem with alcohol or street drugs.

Plaintiff gets up at approximately seven o'clock in the morning to take her medication. She then goes back to bed until her medications take effect at about noon. Plaintiff testified that her mother and daughter do most of the cooking and cleaning, but she will sometimes fix a meal and occasionally do laundry. Plaintiff stated that she went to the grocery story the week before the hearing.

Plaintiff testified that she enjoys reading the Sunday newspaper. She also has a driver's license and drove two days before the hearing to see her lawyer, but she tries to limit her drives because she gets confused. Plaintiff no longer has any hobbies she enjoys doing. She used to

3

ride motorcycles but has been unable to do so since 2005. Plaintiff takes care of her own hygiene. Plaintiff also stated that she emails friends but cannot stay on the computer more than 10 or 15 minutes because her hands fall asleep.

Plaintiff testified that she used to enjoy watching her children compete in sporting events, but she can no longer sit through their games. Plaintiff attributed her weight gain to her pregnancies, surgeries, and stress eating. She is no longer able to exercise to lose weight due to her pain.

Plaintiff stated that she could bend or stoop "less than occasionally" because of her pain, stiffness, and knee problems. (R. 479.) She is unable to crawl on her knees at all and can push and pull infrequently because of the weakness in her hands and wrists. Plaintiff stated that she can reach over her head or in front of her body only rarely. She sleeps about four hours a night because her pain and racing thoughts keep her awake.

Plaintiff spends most of the day sitting in her chair. She does not help her children with their homework because she is no longer able to understand it. Plaintiff will occasionally talk on the phone, but it is difficult because her hands go numb. Plaintiff cannot always comprehend what she reads in the newspaper. Plaintiff also testified that other people make her anxious and angry, and that her daily interactions frequently cause her to cry.

Plaintiff testified that she did not believe she could sit for more than 20 or 30 minutes before she would become uncomfortable and stiff. Plaintiff can stand for only 15 to 20 minutes before her knee pain would necessitate sitting. Plaintiff testified she would be able to alternate sitting and standing for approximately four hours before she would have to stop. Plaintiff testified that her pain level is normally an eight out of ten due to knee, hand, back, and foot pain.

Plaintiff reiterated that she had never had a problem with alcohol, cocaine, or marijuana. After the ALJ pointed out that the record indicated she had a problem, Plaintiff stated that she had used these substances in high school, but never had a "problem." (R. 482.) The ALJ noted

that Plaintiff's medical records indicate she last used alcohol in 2005. Plaintiff again stated that the last time she used cocaine was during high school. The ALJ noted that her medical records indicate she used it in 1999. Plaintiff stated that these dates were inaccurate and that she had passed a drug test at each of her previous jobs.

Plaintiff's husband, Mr. Hastings, testified that Plaintiff spends most of her time in her recliner with her legs elevated. Mr. Hastings stated that earlier in their marriage, Plaintiff had enjoyed many activities and preferred to be out of the house. He testified that Plaintiff exhibits mood swings, a lack of concentration, absent-mindedness, and frequent crying. Mr. Hastings stated that Plaintiff never appears comfortable and has trouble gripping and carrying objects. She has difficulty walking and standing up without help. Mr. Hastings stated that he believes Plaintiff rarely goes to the store by herself, although she eats out frequently. He has not observed her using cannabis and he has only rarely seen her have one drink on some special occasion.

The ALJ asked the VE to consider a hypothetical individual who is limited to light and sedentary work that does not require climbing, working at unprotected heights, kneeling, crouching, or crawling, and that requires only occasional bending or stooping. Additionally, the ALJ stated that this individual could not walk for prolonged periods of time or sustain a strong grip. The VE testified that an individual with these limitations could still perform Plaintiff's past jobs as higher-level cashier, customer service, and car dealership receptionist. The ALJ then asked the VE to consider all unskilled, entry-level jobs. The VE testified that an individual with these limitations and also limited to unskilled, entry-level jobs could work as an order clerk or cashier two. The ALJ then asked whether any sedentary jobs satisfied these limitations. The VE testified that this individual would be able to perform the sedentary position of surveillance systems monitor. The ALJ asked the VE if these jobs were unskilled, routine, and repetitive, and the VE testified that they were. The ALJ asked if the VE's testimony was consistent with the Dictionary of Occupational Titles (hereinafter "DOT"). The VE said that it was.

### D. The ALJ's Decision

The SSA defines "disabled" as the inability "to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). To determine whether a claimant is disabled within the meaning of the Social Security Act, the ALJ must proceed through a five-step analysis. 20 C.F.R. § 416.920(a-f). At each step, if the ALJ affirmatively finds the claimant disabled or not disabled, the inquiry ends, but if no determination can be made, the Commissioner proceeds to the next step. 20 C.F.R. § 416.920(a)(4). If the claimant is currently employed or was previously employed during the relevant period, he is not disabled. 20 C.F.R. § 416.920(a)(4)(i). The second question is whether the claimant has a severe medical impairment that will last at least twelve months. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant does not have a severe impairment, the inquiry ends. *Id*. However, if the claimant has a severe impairment, the third step is to ask whether the severe impairment meets or equals one listed in Appendix 1 to subpart P of part 404 of Chapter 20. 20 C.F.R. § 416.920(a)(4)(iii). If it does, the claimant is disabled. *Id*. If it does not, between steps three and four, the Commissioner determines the claimant's residual functional capacity, that is, the work he is still able to perform despite limitations. 20 C.F.R. § 404.1545. The fourth question is whether claimant is able to perform his past relevant work with his current impairment. 20 C.F.R. § 416.920(a)(4)(iv). If he can, then he is not disabled. *Id*. If he is not able to perform his past work, the fifth and final question is whether, with his current limitations, he can perform other work that exists in significant numbers in the national economy. 20 C.F.R. § 416.920(c)(1).

In the present case, at the first step, the ALJ found that while Plaintiff had worked part time since January 2003, that work did not constitute substantial gainful activity. At the second step, the ALJ found that Plaintiff has the severe and nonsevere impairments of fibromyalgia, osteoarthritis, rheumatoid arthritis, GERD, hypertension, hyperlipidemia, osteochondritis, carpal tunnel syndrome, headaches, obesity, depression/bipolar disorder, and anxiety disorder, and a history of right knee fracture, right foot spur, and alcohol and drug (cocaine and marijuana) abuse. (R. 24.) At the third step, the ALJ found that none of these impairments met or medically

equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. At the fourth step, the ALJ found Plaintiff capable of performing most of her past relevant work. Nevertheless, the ALJ continued to step five and found that Plaintiff was also able to perform jobs that exist in significant numbers in the economy.

## II. Standard of Review

The ALJ's decision is subject to review by this Court pursuant to 42 U.S.C. § 405(g). This Court does not review the facts *de novo*, rather, "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Thus, if reasonable minds could differ as to whether or not a plaintiff is entitled to benefits, the Court must uphold the ALJ's decision. *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996) (quoting *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)). This Court's task is to determine whether substantial evidence in the record supports the ALJ's decision. *Id.* at 977-78.

The Court defers to the ALJ's credibility findings. This deferential standard acknowledges that the reviewing court does not have the opportunity to hear and see witnesses, as the ALJ does. *Sims v. Barnhart*, 442 F.3d 536, 537-38 (7th Cir. 2006). Therefore, courts uphold an ALJ's credibility finding as long as the record affords some support for the finding.

## III. Discussion

Plaintiff argues that the ALJ erred because she (1) ignored evidence of severe mental impairments without sufficient explanation, (2) made an improper credibility finding, and (3) provided incomplete hypothetical questions to the VE at steps four and five.

### A. Assessment and Articulation of Mental Health Evidence

Plaintiff first argues that the ALJ ignored evidence that her mental impairments were severe. As a result, the RFC was incomplete. Specifically, Plaintiff contends that the ALJ relied on Plaintiff's past part-time work and a one-page letter from social worker Ann Russell to show Plaintiff's mental competence and she did not explain why she did not consider more extensive mental health records developed by social worker Kristine Fastinger. In addition, Plaintiff contends that the ALJ ignored the fact that fibromyalgia has been shown to exacerbate depression.

The ALJ must consider all evidence presented and cannot selectively discuss only that evidence that supports his conclusion. 20 C.F.R. § 404.1529(c)(3); *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ must also "build a bridge from the evidence to his conclusions." *Sims v. Barnhart*, 309 F.3d 424, 429 (7th Cir. 2002) (quoting *Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000)). However, the ALJ need not discuss every piece of evidence in his decision. *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995).

Plaintiff's contention that the ALJ impermissibly used Plaintiff's part-time work to show that her mental impairments were not severe more directly relates to the ALJ's credibility finding and the Court will discuss that issue in the next section.

Plaintiff states that fibromyalgia has been noted to cause depression and, therefore, the ALJ should have considered her claims of severe mental impairment more carefully. However, the ALJ did note Plaintiff's fibromyalgia and specifically stated that she considered all impairments in combination. Plaintiff does not cite any evidence in the record that shows her fibromyalgia complicated or exacerbated her mental impairments. As a result, Plaintiff's argument is unpersuasive.

As Plaintiff stated, the ALJ relied on Ms. Russell's letter in reaching her decision. The ALJ noted in her opinion that Ms. Russell stated in an August 2007 letter to Dr. Zabaneh that Plaintiff did not need to see a psychiatrist at their facility. The ALJ also considered

Ms. Russell's statement that one of Plaintiff's physicians would not prescribe her psychotropic medication without proof it was necessary. Plaintiff does not contend that the ALJ erred by considering evidence from Ms. Russell; however, she contends that the ALJ should have considered the more extensive evaluations that Ms. Fastinger completed in May 2006. However, even Ms. Fastinger noted that "a diagnosis of Bipolar Disorder is not warranted at this time . . . [Plaintiff] does not meet the criteria for Major Depressive Disorder or Bipolar Disorder." (R. 244.) Thus, Ms. Fastinger's evaluation supports the ALJ's decision and is not inconsistent with Ms. Russell's letter. As noted above, an ALJ need not discuss every piece of evidence in his decision. Accordingly, the Court concludes that the ALJ did not err by failing to discuss Ms. Fastinger's opinions.

In assessing Plaintiff's mental impairments, the ALJ also considered Dr. Terry's findings that Plaintiff had no difficulty maintaining social functioning or episodes of decompensation, only mild restrictions in the activities of daily living, and a moderate restriction in concentration, persistence, and pace. Dr. Terry diagnosed Plaintiff with mild bipolar disorder and opined that Plaintiff would not be significantly limited in her ability to perform activities within a schedule and maintain attendance. He also found she would be able to respond appropriately to changes in a work setting.

Substantial evidence in the record supports the ALJ's determination that Plaintiff's mental impairments are not severe, and the ALJ sufficiently explained the link between the evidence and her conclusion. Thus, the Court concludes that ALJ's RFC was adequate and supported by medical evidence.

### B.  The ALJ's Credibility Finding

Plaintiff next argues that the ALJ improperly based her credibility finding on her own lay opinion of the medical evidence, Plaintiff's part-time work and daily tasks, and a misconstruction of Plaintiff's testimony.

9

When evaluating an ALJ's credibility determination, courts give great deference to the assessment because the ALJ has the ability to see and hear witnesses who testify at the hearing. *Sims*, 442 F.3d at 537-38; *Edwards v. Sullivan*, 985 F.2d 334, 337 (7th Cir. 1993). Therefore, courts will not disturb an ALJ's credibility determination as long as it has some support in the record. *Id*. In a recent decision, the Seventh Circuit court stated that a court reviewing a credibility determination "merely examine[s] whether the ALJ's determination was reasoned and supported." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (citing *Jens v. Barnhart*, 347 F.3d 209, 213-14 (7th Cir. 2001)). A credibility determination is patently wrong when it "lacks any explanation or support." *Id.* at 413-14.

Plaintiff first contends that the ALJ impermissibly used her own lay opinion of the medical evidence. However, Plaintiff cites no part of the ALJ's opinion to support this argument. Thus, the Court cannot evaluate this argument.

Plaintiff also contends that the ALJ improperly relied on her daily activities, in particular her past part-time work, to impugn her credibility. In support, Plaintiff relies on *Hawkins v. First Union Corporation*, in which the Seventh Circuit stated that no logical incompatibility exists between a claimant working full-time and being disabled from working full-time. *Hawkins v. First Union Corp.*, 326 F.3d 914, 918 (7th Cir. 2003). However, in the present case, the ALJ did not use past work to show that future work was possible. Rather, the ALJ noted that Plaintiff's part-time work after the alleged onset date of her disability contradicted her testimony about the severity of her symptoms. *Hawkins* expressly allowed such use of past work, stating that precisely such a contradiction could "fatally undermine" a plaintiff's credibility. *Id.* Thus, the ALJ did not err by considering Plaintiff's past work when assessing credibility.

Plaintiff next contends that the ALJ misconstrued Plaintiff's testimony concerning her past drug and alcohol use. Plaintiff states in her memorandum that she openly admitted to having used drugs and alcohol, and that her denial during the hearing was meant to indicate she had never had a "problem" with drugs or alcohol, not that she never consumed them. However, at the hearing, Plaintiff only admitted her past drug and alcohol use when the ALJ specifically

pointed out that the medical records showed she had previously admitted to their use. Furthermore, Plaintiff initially stated at the hearing that the last time she had used drugs was in high school, but the medical records indicate she had used them in 1999 and 2004. (R. 492-93, 197.) In light of these discrepancies, the Court finds that the ALJ accurately characterized the evidence in her credibility finding. Accordingly, the Court concludes that the ALJ's credibility determination is not patently wrong.

### C. The ALJ's Hypothetical Questions

Plaintiff next argues that the ALJ's step-four analysis is flawed because the hypothetical question she provided the VE did not include a skill level or address the demands of Plaintiff's past jobs as Plaintiff performed them. Furthermore, Plaintiff contends that the ALJ's step-five analysis was also flawed because the hypothetical question did not contain all of Plaintiff's limitations nor did the ALJ verify that the VE's testimony was consistent with the DOT.

The Court need not consider whether the ALJ erred at step four. Any error the ALJ may have committed at step four is harmless because, as explained below, the ALJ performed a proper analysis at step five. *See Keys v. Barnhart*, 347 F.3d 990, 994-95 (7th Cir. 2003) (applying harmless error review to ALJ's determination).

Plaintiff also contends that the hypothetical question the ALJ asked the VE at step five was incomplete because it did not include all of Plaintiff's limitations. Specifically, Plaintiff contends that the ALJ should have included limitations on Plaintiff's ability to perform fine finger manipulations, reach and hold out her arms, maintain concentration, and meet attendance requirements. She contends that her limitations in these areas effectively eliminate all jobs the VE found Plaintiff capable of performing.

An ALJ must base her hypothetical question to the VE on the available medical evidence. *Meredith v. Bowen*, 833 F.2d 650, 654 (7th Cir. 1987). Here, Dr. Virgilio's physical RFC assessment stated that Plaintiff had no push/pull or limb limitations. (R. 221.) Similarly, although the ALJ's first RFC did not include limitations related to concentration, the ALJ's

subsequent questions to the VE narrowed the RFC to include only unskilled jobs. (R. 498.) Dr. Terry's mental assessment of Plaintiff stated that even considering her difficulties in concentration, Plaintiff would be able to perform unskilled labor. (R. 214.) The ALJ also asked the VE if the jobs were routine and repetitive to ensure that the jobs the ALJ found Plaintiff could perform were all unskilled, routine, and repetitive. Therefore, the ALJ asked questions of the VE that were consistent with Dr. Terry's report and indirectly included limitations on concentration. Furthermore, the available medical evidence contradicts an attendance limitation: When assessing Plaintiff's mental RFC, Dr. Terry found that she was not significantly limited in her ability to maintain regular attendance. Based on this evidence, the Court cannot conclude that the ALJ's hypothetical question was improper.

Finally, Plaintiff contends that the Court should reverse or remand the ALJ's decision because the ALJ did not verify that the VE's testimony was consistent with the DOT. Under SSR 00-4p, the ALJ satisfies his duty if the ALJ (1) asks the VE whether any conflict exists; and (2) obtains a reasonable explanation for and resolves any conflict that is identified. Thus, where the ALJ does inquire, and noone identifies a conflict, the ALJ may rely on the VE's testimony. *See Donahue v. Barnhart*, 279 F.3d 441, 445-47 (7th Cir. 2002) (stating in dictum (because SSR 00-4p was promulgated subsequently and thus was not directly applicable) that where noone identified a conflict at the hearing, the ALJ's reliance on the VE's testimony was proper, and the plaintiff was foreclosed from raising the conflict on appeal).

As an initial matter, the Court notes that Plaintiff's memorandum did not identify any part of the VE's testimony that was in conflict with the DOT. Plaintiff does raise a potential inaccuracy within the DOT itself. However, the letter Plaintiff attached to her memorandum did not support her argument.

In the present case, the ALJ fulfilled her obligation by specifically asking the VE if his testimony was consistent with the DOT. The VE responded it was. (R. 506.) The SSR requires nothing more of the ALJ. Furthermore, Plaintiff failed to identify any potential conflicts at the hearing. Therefore, consistent with *Donahue*, this Court concludes that Plaintiff may not now challenge the ALJ'S decision by raising any purported conflicts. Thus, the ALJ's reliance on the VE's testimony was proper.

### IV. Summary

For the reasons stated above, this Court recommends that Plaintiff's Motion for Summary Judgment or Remand **(#12)** be **DENIED**. The parties are advised that any objection to this recommendation must be filed in writing with the clerk within ten working days after being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTER this 31st day of July, 2009.

                                            s/ DAVID G. BERNTHAL
                                            U.S. MAGISTRATE JUDGE